IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

|  |  |  |
|---|---|---|
| NANCY S. WHITE d/b/a WHITE'S TRADING & ARMS, and JEFFREY WHITE, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civil No. 1:15-cv-1195 |
| v. | ) ) ) | Hon. Liam O'Grady |
| PUNITA GROUP, INC., and PRATEEK SETHI, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

This diversity action arises out of the discharge of a firearm at the Great American Outdoor Show in Harrisonburg, Pennsylvania. Pending before the Court is a motion to dismiss the complaint for failure to state a claim. (Dkt. No. 35). Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7(J), the Court dispensed with an oral hearing. For the reasons stated herein, the Court will grant the motion in part and deny it in part.

### I. Background

A.   <u>Allegations in the Amended Complaint</u>[1]

Plaintiff Nancy White is the sole proprietor of the Pennsylvania-based company, White's Trading and Arms ("White's Trading"). Am. Compl. ¶ 2. She is married to Plaintiff Jeffrey White. Defendant Punita Group, Inc. ("Punita Group") is a Virginia company that imports leather goods and outdoor equipment for sale in the United States. *Id.* ¶ 4. As is relevant here,

---

[1] Because this matter comes before the Court on a motion to dismiss, the Court accepts all well-pled factual allegations in the Amended Complaint as true. *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 (4th Cir. 2015).

one of the products that Punita Group imports are gun bags designed to carry handguns and ammunition. *Id.* Punita Group is a family-owned and operated business: Harsh Sethi owns the company and serves as an officer; his wife, Punita Sethi, is an officer; and their son, Prateek Sethi, is employed as a salesperson. *Id.* ¶¶ 5, 34–35.

In February 2015, the National Rifle Association of America ("NRA") sponsored the week-long Great American Outdoor Show (the "Outdoor Show") in Harrisonburg, Pennsylvania. The Outdoor Show "is the largest consumer sports and outdoor show in the world," featuring "nearly 1,100 hunting, fishing, shooting, sports, archery, boating, RV, and outfitter exhibits[;] 200 outdoor seminars and demonstrations[;] daily celebrity appearances[;] and more than a dozen special events and appearances." *Id.* ¶ 10. In advance of the Outdoor Show, White's Trading entered into an agreement with Punita Group pursuant to which White's Trading would lease exhibition space from the NRA for the purpose of displaying and selling Punita Group's gun bags. In exchange, Punita Group would pay the exhibitor's fee and limit its recoupment to the wholesale value of each bag sold. *Id.* ¶¶ 11–12.

During the show, Jeffrey White "man[ned] the exhibit space . . ., answer[ed] questions of potential customers, and ma[de] sales of Punita Group's gun bags." *Id.* ¶ 13. Prateek Sethi was also there "in his capacity as an employee or agent of Punita Group," delivering new inventory and selling gun bags. In order to sell the bags, Mr. Sethi was required "to demonstrate the[ir] strength and capacity . . . by loading the bags with . . . firearms and boxes of live ammunition." *Id.* ¶ 40. At a Virginia gun show the month prior, Mr. Sethi had handled customers' guns and demonstrated their placement in the bags' interior holsters. *Id.* ¶ 41.

Before sending him to the Outdoor Show, Harsh and Punita knew that Mr. Sethi frequently used marijuana and they believed him to be "immature and unreliable."[2] *Id.* ¶¶ 34–35. Shortly before the Outdoor Show, they decided Mr. Sethi could not attend a gun show in Las Vegas alone because he was "young and sometimes made wrong decisions." *Id.* ¶ 36.

Several days into the Outdoor Show, Mr. White brought three of his personal firearms and four ammunition magazines in order to have them engraved by another vendor. *Id.* ¶ 13. In accordance with the show's rules, the firearms were not loaded, and he stored them in a latched gun case under one of the display tables. *Id.* The Amended Complaint alleges that "during a brief moment when Mr. White turned his attention away from Sethi, Sethi seized control of and opened Mr. White's gun case, removed [a] handgun . . . and also removed a magazine." *Id.* ¶ 14. He then "inserted the magazine into the handgun (in violation of the Outdoor Show's rules, which were prominently posted at the entrance of the show), racked the handgun's slide (thereby loading a live cartridge into the gun's chamber and cocking the hammer), pointed the handgun toward the floor in Mr. White's direction, and pulled the trigger." *Id.* The bullet "pierced" the gun case and hit the floor "approximately five inches from Mr. White's foot." *Id.* The bullet fragments shredded a cloth tote bag sitting next to Mr. White. *Id.*

Mr. White immediately restrained Mr. Sethi and another employee removed the gun from his hands. *Id.* Police arrived on the scene and arrested both Mr. Sethi and Mr. White. *Id.* ¶ 17. Mr. White, who is "an honorably discharged, decorated United States Marine, a holder in good standing of a Federal Firearms License, and a well-regarded member of the firearms dealer community in Pennsylvania, . . . was personally embarrassed, shamed, and humiliated by being

---

[2] Because the Sethis share a last name with the defendant, the Court utilizes their first names for ease of reference.

arrested by the police and paraded through the Outdoor Show in handcuffs as if he were a criminal." *Id.*

The same day, White's Trading was ejected from the Outdoor Show, resulting in the loss of sales, commercial embarrassment, and goodwill in the firearms community. *Id.* ¶ 18. The NRA also banned White's Trading from renting and selling products at all NRA-sponsored trade shows in the future. *Id.* ¶ 19. White's Trading's invitation to a "highly coveted, commercially valuable" expo that spring was also rescinded. *Id.* ¶¶ 20–21.

In addition to commercial injury suffered, the incident also triggered Mr. White's pre-existing post-traumatic stress disorder ("PTSD"). *Id.* ¶ 28. His symptoms include insomnia, vivid and highly disturbing repetitive flashbacks, extreme anxiety, mental distress, depression, extreme sensitivity to loud noises, outbursts of anger, irritability, rapid changes in mood, excitability, and panic attacks. *Id.* He also experiences what he describes as "a fight or flight response" when he is able to sleep, during which he either becomes physically violent with persons or objects around him or patrols his house in a semi-conscious state to check for intruders or threats. *Id.* ¶¶ 26, 28. The renewed PTSD and depression have also resulted in cognitive and memory impairment. *Id.* ¶ 28. Mr. White also suffers from angina or chest pain, which is exacerbated by his anxiety and mental distress. *Id.* ¶¶ 28, 32. All of this has required medical and psychiatric treatment. *Id.* ¶¶ 30–31. Mr. White has not been able to work as a consultant to White's Trading or other firearms businesses because he is unable to attend gun shows and similar events without having a panic attack. *Id.* ¶ 29.

B.    Procedural History

The Amended Complaint alleges six Pennsylvania state-law claims against Punita Group and Mr. Sethi: (1) conversion; (2) reckless or grossly negligent handling and discharge of a

firearm; (3) reckless or grossly negligent infliction of severe emotional distress; (4) reckless or grossly negligent hiring, training, and supervision; (5) reckless or grossly negligent failure to provide a safe environment; and (6) vicarious liability. (Dkt. No. 43). Plaintiffs are seeking both compensatory and punitive damages. Defendants move to dismiss all of Plaintiffs' claims with the exception of Count II for failure to state a claim. (Dkt. No. 35). Defendants also seek a ruling that Plaintiffs failed to state a viable claim for punitive damages. The motion is fully briefed.

## II. Discussion

A.   Standard of Review

In considering a motion to dismiss, the court accepts as true all of the factual allegations contained in the complaint, construing them in the light most favorable to the plaintiff. *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). "To survive dismissal, the complaint must contain enough facts to state a claim to relief that is plausible on its face." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (internal quotation marks omitted).

B.   Conversion (Count I)

Count I alleges that Mr. Sethi unlawfully converted Mr. White's "handgun, magazine, and .45 caliber cartridges." Am. Compl. ¶ 49. In Pennsylvania, "[a] conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Stevenson v. Econ. Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964). Defendants do not assert that Plaintiffs failed to allege an actionable conversion under Pennsylvania law. Indeed, "[a] deliberate taking of another's personal property without consent is the strongest and clearest case

5

of conversion." *Cenna v. United States*, 402 F.2d 168, 170 (3d Cir. 1968). Instead, they contend the claim fails because Plaintiffs seek to recover damages beyond those reasonably attributable to the value of the property converted. In response, Plaintiffs emphasize the discretion available in determining the appropriate compensation in conversion cases and insist that the circumstances of this case require a broader lens.

The Court finds it unnecessary to wade into the damages dispute at this stage of the litigation. "A prevailing plaintiff in a conversion action is entitled to damages 'for all actual losses or injuries sustained as a natural and proximate result of the converter's wrong.'" *Fort Washington Res., Inc. v. Tannen*, 901 F. Supp. 932, 944 (E.D. Pa. 1995) (quoting *Am. E. India Corp. v. Ideal Shoe Co.*, 400 F. Supp. 141, 169 (E.D. Pa. 1975)). "Generally, this amount translates to the value of the converted property at the time of the conversion." *Id.* But "[t]he court's over-arching task . . . is to compensate the plaintiff for the defendant's wrong, fitting the remedy to the particular circumstances of the case." *Id.*

While Defendants may believe Plaintiffs have little hope of establishing damages greater than the value of the property at the time of the alleged conversion or any damages at all, Plaintiffs may plausibly attempt to do so. Moreover, Pennsylvania permits a plaintiff unable to offer sufficient evidence of actual damages arising out of a conversion to nonetheless vindicate his or her rights by way of nominal damages. *See Stevenson*, 197 A.2d at 727 ("No acceptable evidence was offered as a basis for fixing compensation for that deprivation of possession, nor did [the plaintiff] prove real, special or other compensatory items of damages. In the absence of such proof, [the plaintiff's] recovery for the technical and temporary interference with her right of access and possession must be limited to a vindication of that right by an award of nominal damages."); *see also Bamont v. Pa. Soc'y for the Pres. of Cruelty to Animals*, No. 14-cv-6205,

2016 WL 649627, at *12 n.115 (E.D. Pa. Feb. 16, 2016) (published opinion) ("[D]amages are not a required element of conversion and thus [a plaintiff] may obtain nominal damages if she is able to prove the elements but cannot present acceptable evidence for fixing compensatory damages."); *Bell v. Money Res. Corp.*, No. 08-cv-639, 2009 WL 382478, at *5 (E.D. Pa. Feb. 13, 2009) ("The *Stevenson* Court recognized that a conversion claim with no actual damages does not cease to be a cognizable claim."). Defendants have also asked for punitive damages based on the alleged conversion, another viable theory under Pennsylvania law. *See Stevenson*, 197 A.2d at 727; *Broederdorf v. Bacheler*, No. 15-cv-2117, 2015 WL 5334265, at *12 (E.D. Pa. Sept. 14, 2015) (published opinion) ("Punitive damages are allowed under Pennsylvania law in claims of . . . conversion." (footnotes omitted)). Accordingly, Defendants' motion to dismiss Count I is denied.

C.    Reckless Infliction of Emotional Distress (Count III)

Count III charges Mr. Sethi with reckless infliction of emotional distress. Defendants contend Pennsylvania does not recognize the tort, and that, even assuming it does, Plaintiffs have failed to allege sufficiently outrageous behavior or the requisite physical harm.

It is undisputed that the Pennsylvania Supreme Court has not explicitly recognized intentional or reckless infliction of emotional distress as a cause of action under Pennsylvania law. *See Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000); *Hoy v. Angelone*, 720 A.2d 745, 753 n.10 (Pa. 1998). Numerous intermediate appellate courts in Pennsylvania, as well as federal courts applying Pennsylvania law, have however. *See, e.g., Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 218–19 (3d Cir. 2001); *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005); *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989). Moreover, the Pennsylvania Supreme Court has cited,

without officially adopting, Section 46 of the Restatement (Second) of Torts as "setting forth the minimum elements necessary to sustain such a cause of action." *Taylor*, 754 A.2d at 652; *see also Kazatsky v. King David Mem'l Park*, 527 A.2d 988, 991 (Pa. 1987). Accordingly, the Court finds a cause of action for reckless infliction of emotional distress exists under Pennsylvania law and turns to whether Plaintiffs have pled a plausible claim. *See Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999) (instructing district courts sitting in diversity to consider restatements of the law, well considered dicta from the state's highest court, and trial court decisions).

Under the Restatement, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." Restatement (Second) of Torts § 46 (1965). From this standard, Pennsylvania courts have distilled the following requirements for a claim: (1) intent or recklessness; (2) extreme and outrageous conduct; (3) severe emotional distress; and (4) resulting physical harm due to the defendant's outrageous conduct. *Swisher*, 868 A.2d at 1230; *Field*, 565 A.2d at 1184. Defendants attack the second and fourth elements.

A court may determine "in the first instance[] whether the actor's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery." *Thompson v. AT&T Corp.*, 371 F. Supp. 2d 661, 683 (W.D. Pa. 2005) (quoting *Reimer v. Tien*, 514 A.2d 566, 569 (Pa. Super. Ct. 1986). The conduct necessary is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" Restatement (Second) of Torts § 46 cmt. d. It is insufficient "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been

characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id.*

In undertaking that role, this Court is cognizant of the fact that "Pennsylvania courts have rarely held that a defendant's behavior constituted outrageous conduct." *Littleton v. State Farm Fire & Cas. Co.*, No. 1:07-cv-1515, 2007 WL 3237516, at *4 (M.D. Pa. Oct. 30, 2007). The Pennsylvania Supreme Court has said that the tort is "reserved by the courts for only the most clearly desperate and ultra extreme conduct." *Hoy*, 720 A.2d at 754; *see also Kazatsky*, 527 A.2d at 991 ("The availability of recovery under section 46 is highly circumscribed.").

The three most commonly cited examples of conduct egregious enough to meet this high bar are *Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970), where the defendant struck and killed the plaintiffs' son, failed to notify authorities or seek medical assistance, and buried the body in a field where it was discovered months later; *Banyas v. Lower Bucks Hospital*, 437 A.2d 1236 (Pa. Super. Ct. 1981), where the defendants intentionally fabricated records to suggest that the plaintiff had killed a third party and the plaintiff was indicted for homicide; and *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d. Cir.1979), where the Eagles' team physician incorrectly diagnosed the plaintiff with a fatal condition, discussed the condition with press, and the plaintiff learned of the diagnosis by reading a newspaper article. Other examples include the sexual abuse of a young parishioner by a priest, *Johnson v. Caparelli*, 625 A.2d 668 (Pa. Super. Ct. 1993); the deliberate release of radioactive steam on an individual and subsequent false statements to conceal those actions, *Field*, 565 A.2d 1170; the denial of treatment by an emergency room doctor to a patient who was unable to walk, resulting in the patient being left partially clothed on the hospital floor for hours, *Hoffman v. Mem. Osteopathic Hosp.*, 492 A.2d 1382 (Pa. Super. Ct. 1985); and sexual contact between an adult and two young children and the

encouragement of sexual contact between the children over a four-year period, *Pennsylvania v. Balisteri*, 478 A.2d 5 (Pa. Super. Ct. 1984).

In this case, the Court finds that the allegations that Mr. Sethi loaded a handgun, pointed it at the ground close to where Mr. White stood, and discharged a bullet that landed five inches from him is sufficiently egregious to withstand a motion to dismiss. While Defendants may be correct that the context of the incident—in a booth selling gun paraphernalia at an outdoor show sponsored by the NRA—is relevant to the ultimate determination of outrageousness, it does not warrant dismissal at this early stage of the litigation.

The Court also disagrees with Defendants' contention that the Amended Complaint fails to allege the requisite physical injury or harm. The Amended Complaint alleges Mr. White has suffered "physical injury" and specifically that Mr. Sethi's actions caused post-traumatic stress disorder and exacerbated angina or chest pain for which Mr. White has sought medical treatment. *Cf. Kane v. Chester Cty. Dep't of Children, Youth & Families*, 10 F. Supp. 3d 671, 693 (E.D. Pa. 2014) (finding allegation that plaintiff had been diagnosed with PTSD sufficient). At this stage, Mr. White has pleaded facts sufficient to find physical injury. Accordingly, Defendants' motion to dismiss Count III is denied.

D.     Failure to Exercise Reasonable Care in Hiring, Training, and Supervision (Count IV)

Count IV of the Amended Complaint seeks damages against Punita Group for its alleged reckless or grossly negligent failure to exercise reasonable care in hiring, training, and supervising Mr. Sethi. As a general rule, courts dismiss supervision and hiring claims where an agency relationship exists between the supervisor defendant and the employee co-defendant unless a viable claim for punitive damages against the supervisor defendant exists. *See Allen v.*

*Fletcher*, No. 3:07-cv-0722, 2009 WL 1542767, at *4–5 (M.D. Pa. June 2, 2009). Defendants argue Plaintiffs have failed to state a plausible claim for punitive damages against Punita Group.

In response, Plaintiffs contend the Amended Complaint adequately alleges that Punita Group consciously disregarded a known risk by sending Mr. Sethi to the Outdoor Show. Specifically, it alleges that Punita Group sent Mr. Sethi to the Outdoor Show without supervision and without any training as to how to handle firearms and ammunition despite the fact that his job required handling both items. Punita Group also knew that Mr. Sethi would be handling firearms because he had done so at a gun show the week prior selling the same gun bags. The Amended Complaint also alleges that Harsh and Punita, each of whom serves as an officer to Punita Group, knew that Mr. Sethi frequently used marijuana. They also believed Mr. Sethi to be immature and unreliable. So much so that Punita Group had declined to send him unaccompanied to another gun show the month prior.

Under Pennsylvania law, "punitive damages are an 'extreme remedy' available only in the most exceptional matters." *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005). They "may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (internal citations omitted). The Pennsylvania Supreme Court has "stressed that, when assessing the propriety of the imposition of punitive damages, the state of mind of the actor is vital." *Id.* (internal quotations and alteration omitted). It must be the case that the "defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that . . . he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Id.* at 772.

It is too early to determine where Punita Group's alleged conduct falls on the spectrum between negligence and reckless indifference. At this stage, Plaintiffs have sufficiently pled a

11

claim for punitive damages.  Whether it remains viable will depend on discovery.  *See Kane*, 10 F. Supp. 3d at 694 ("Although the facts may later prove at most that defendants were merely negligent, discovery is necessary to help make this determination. Dismissing plaintiffs' punitive damages claim now at the pleading stage would be premature."); *Smith v. INGRAM MICRO, INC.*, No. 1:15-cv-1301, 2015 WL 7736742, at *4 (M.D. Pa. Dec. 1, 2015) ("Although [defendant] argues that these allegations support, at most, a claim for negligence, the motion to dismiss stage is not the appropriate time to differentiate between negligent and reckless conduct."); *Fassett v. Sears Holdings Corp.*, No. 4:15-cv-941, 2015 WL 5093397, at *3 (M.D. Pa. Aug. 28, 2015) (stating "common sense" need for claim to proceed to discovery); *Young v. Westfall*, No. 4:06-cv-2325, 2007 WL 675182, at *3 (M.D. Pa. Mar. 1, 2007) ("[T]he clear trend in this Circuit is to permit adequately pled claims of punitive damages based on negligence to proceed to discovery.").  Accordingly, the motion to dismiss Count IV is denied.

E.    Premises Liability (Count V)

Count V alleges that Punita Group recklessly or negligently failed to provide a safe environment.  Although Plaintiffs did not label Count V as a premises liability claim, they utilize language sounding in premises liability.  Moreover, Defendants treated the claim as a premises liability claim in their motion to dismiss and Plaintiffs followed suit in their opposition brief. Accordingly, the Court will apply Pennsylvania premises liability law in considering whether to dismiss the claim.

Pennsylvania courts have adopted § 343 of the Restatement (Second) of Torts, which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965).

Defendants raise two challenges to the assertion of premises liability. First, they contend it was Mr. White who created the dangerous condition by bringing firearms to the Outdoor Show, not Punita Group. Plaintiffs, of course, disagree. At bottom, the parties' disagreement centers on a factual dispute not suited for resolution on a motion to dismiss. The Amended Complaint alleges that placing Mr. Sethi in an environment with numerous firearms created a dangerous condition that Punita Group knew or should have known involved an unreasonable risk of harm to its invitees, including Mr. White and White's Trading. That is sufficient to survive a motion to dismiss.

Second, Defendants argue that the Amended Complaint fails to allege that Punita Group possessed the premises. Under Pennsylvania law, no duty can rise absent possession of the land. *See Estate of Zimmerman v. Se. Pa. Transp. Auth.*, 168 F.3d 680, 684 (3d Cir. 1999) (citing *Blackman v. Fed. Realty Inv. Trust*, 664 A.2d 139, 142 (Pa. Super. Ct. 1995)). The Pennsylvania Supreme Court follows the Restatement's definition of a "possessor of land" as one "who is in occupation of the land with intent to control it." Restatement (Second) of Torts § 328E (1965). A party may possess land without owning it, *Billie v. Autism Speaks, Inc.*, 548 F. App'x 44, 46 (3d Cir. 2013) (citing *Davis v. City of Phila.*, 987 A.2d 1274, 1279 (Pa. Commw. Ct. 2010)), but mere use of land "does not equate with possession." *Zimmerman*, 168 F.3d at 685.

13

The Court finds that the Amended Complaint adequately alleges that Punita Group occupied the land where Mr. Sethi discharged the firearm and intended to control it. The Amended Complaint alleges that "Punita Group arranged with White's Trading that White's Trading would lease exhibitor space for Punita Group's use at the Outdoor Show, and Punita Group agreed that it would pay the applicable exhibitor's fees." Am. Compl. ¶ 11. It also refers to the space at the Outdoor Show as "Punita Group's exhibit space" and "Punita Group's . . . booth." *Id.* It further alleges that "Punita Group was the real party in interest with respect to the exhibitor space rented by White's Trading at the 2015 Outdoor Show" and that "Punita Group arranged for White's Trading and White's Trading personnel to occupy the exhitor space rented at the NRA show for the purpose of selling Punita Group products." *Id.* ¶ 43.   Whether a reasonable trier of fact is able to conclude that Punita Group was a possessor of the land is a question appropriately reserved for summary judgment. Accordingly, the Court will deny the motion to dismiss Count V.

F.    Vicarious Liability (Count VI)

Count VI states a separate claim of vicarious liability against Punita Group for Mr. Sethi's actions. Defendants ask the Court to dismiss the claim because "[r]espondeat superior is not a separate cause of action, but rather a method to impute liability to a principal for the actions of an agent." *Gjeka v. Del. Cty. Cmty. Coll.*, No. 12-cv-4548, 2013 WL 2257727, at *9 (E.D. Pa. May 23, 2013); *Care v. Reading Hosp. & Med. Ctr.*, No. 03-cv-4121, 2004 WL 728532, at *12 (E.D. Pa. Mar. 31, 2004).   Plaintiffs do not dispute the fact that respondeat superior is not a separate cause of action under Pennsylvania law, asserting instead that Count VI is "simply a legal basis on which Punita Group can be held responsible for Sethi's actions." Opp'n at 29.

The Court disagrees.  Plaintiffs clearly presented vicarious liability as a separate cause of action.  Accordingly, Defendants' motion to dismiss Count VI is granted.  If Plaintiffs wish to amend Counts I, II, and III to reflect a vicarious liability theory, such a request must be made by motion to the Court or by stipulation of the parties.

G.       Punitive Damages

Finally, Defendants ask the Court to deny Plaintiffs' request for punitive damages.  For the reasons already explained, the Court finds a ruling on punitive damages to be premature.

### III.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 35) is granted in part and denied in part.  An appropriate order shall issue.

March 18, 2016
Alexandria, Virginia

                                        /s/
                        _____
                        Liam O'Grady
                        United States District Judge